L. P. Kulka v. Commissioner.
Kulka v. Commissioner
Docket No. 9190.
United States Tax Court
1946 Tax Ct. Memo LEXIS 72; 5 T.C.M. (CCH) 829; T.C.M. (RIA) 46232; September 30, 1946
L. F. Loux, Esq., 1000 N.B.C. Bldg., Cleveland 14, Ohio, for the petitioner. W. W. Kerr, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income taxes for the years 1939, 1940 and 1941 in the respective amounts of $11,496.81, $4,540.91, and 15,418.75. The deficiencies resulted from the inclusion in petitioner's taxable income of the entire net income of an alleged partnership composed of petitioner and his wife, and of certain sums of money received by petitioner from the partnership alleged to represent traveling expenses. Findings of Fact Petitioner is an individual residing in Alliance, Ohio. He filed his income tax return for the years involved here with the collector of internal revenue *73 for the eighteenth district of Ohio, at Cleveland. Petitioner and his wife, Belle, were married in 1915, and in 1917 moved to Alliance where they have since resided. In 1917, petitioner was employed as manager of a scrap iron business owned by a relative, and his wife assisted him in his position, mostly by keeping his records for him. In 1918, petitioner went into business for himself, operating a scrap metal business as a sole proprietor. Very little capital was required, and Mrs. Kulka contributed none. Mrs. Kulka assisted him during this period by keeping his office records and also by supervising the yard in the absence of petitioner, including the weighing and billing of merchandise. She spent the greater part of her working time during these early years helping petitioner in his business, except for two periods of absence necessitated by the birth of a son in 1920 and a daughter in 1923. Sometime during the 1920's the business was incorporated, and all the capital stock was issued to petitioner, except for qualifying shares in the name of his lawyer, his bookkeeper, and his wife. Mrs. Kulka continued to help in the conduct of the business of the corporation, except that as *74 the business prospered, and additional regular employees were hired, she spent proportionately less time in the business. She drew no regular salary from the corporation or from the sole proprietorship but petitioner would give her, occasionally and irregularly, considerable sums of money as compensation for her services which she invested in a mortgage pool in one of the local banks. By 1931, she had $10,000 in that fund, and in 1931, at the request of the bank, she paid a note for $8,300 owed by petitioner individually to the bank. She considered it a gift to him, made out of a natural interest in his welfare and success, but he regarded it as a loan, and felt he had a moral obligation to return it. In 1938, the corporation was dissolved. The decision to dissolve it resulted from a controversy with the Industrial Commission of the State of Ohio over the required rate of contribution to the workmen's compensation fund by reason of the salaries of petitioner and his wife. [1] After the dissolution of the corporation, petitioner operated the business again for several months as a sole proprietor, thus avoiding the necessity of making any contribution to the workmen's compensation fund *75 based on their salaries or withdrawals. As of January 1, 1939, a partnership agreement was executed by petitioner and his wife. This instrument related that: ARTICLE III. The said L. P. Kulka recognizes the fact that the said Belle Kulka has from time to time contributed to him and in and toward said business, various monies so that she had a substantial interest in the property and business now operated by the said L. P. Kulka, and in order to compensate and adjust said matters, these Articles of Co-Partnership are agreed to and for said purpose shall be considered that the business heretofore operated by the said L. P. Kulka, known as Kulka Iron & Metal Company, shall be contributed by the said L. P. Kulka to the capital of said partnership and both parties hereto shall be considered equal owners thereof, subject, however, to all debts and obligations of the said Kulka Iron & Metal Company business heretofore operated by the said L. P. Kulka. *76 Petitioner later filed a gift tax return, on the advice of counsel, reporting a gift to his wife, as of January 1, 1939, of a one-half interest in the business, valued thereon at $10,095. After the execution of the partnership agreement, the social security and banking records of the business were changed to reflect the partnership status, the Industrial Commission of Ohio, and Dun and Bradstreet were notified of the change, and partnership income tax returns were filed with the collector of the internal revenue. However, the books and records of the company did not contain any capital account reflecting any contribution or investment of capital by Belle Kulka. They contained only one capital or investment account, which bore no name. The books contained a drawing account for Mrs. Kulka, from which she withdrew $60 per week, and to which, in addition, were charged whatever payments were made on her behalf for income to, and, on one occasion, the cost, of an automobile. The profits of the business, attributable to the one-half interest claimed by her, above the amounts so withdrawn by or charged to her, were credited at the end of the year to the single investment account, from *77 which no distribution has ever been made to her. With the $60 per week so withdrawn by her, Mrs. Kulka either bought clothes, or government bonds registered in the names of herself or her husband. These bonds were kept in a safety deposit box to which both petitioner and Mrs. Kulka had access. She did not pay the regular household expenses. During the years subsequent to 1938 Mrs. Kulka spent less time at the business than had been necessary in its early years. A staff of office employees handled the office work, and a yard manager supervised the work in the yard. Mr. Kulka was away from home on business at least two-thirds of the time, but he was in frequent touch with his office by long-distance telephone. During his absence, Mrs. Kulka visited the office and yard for a short time almost every day and occasionally several times a day to see that things were going smoothly, and to sign any checks or documents that required her signature, and to do whatever banking business there was to be done. She did not attempt to negotiate any of the major purchases or sales, or the wrecking of any property so purchased, which constitute the business, or to make any important decisions of *78 any kind relating to the business. She has had stenographic training, but is not a bookkeeper. During the tax years involved here, and for a number of years prior thereto, petitioner drew from the business, whether corporation, sole proprietorship, or partnership, the amount of $50 per week for traveling expenses. During the taxable years he kept no complete record of his expenses, or of the expenditure of this fund. Such a record has been kept during recent years and showed traveling expenses in excess of $2,600 per year. He drew $50 each week, whether he did any travelling or not. He spent several weeks in each of the tax years in Battle Creek Sanitarium but, except for those periods, he was away from home on business from two-thirds to four-fifths of the time. He traveled throughout the country as far East as New York and as far West as Oklahoma for the purpose of buying scrap iron. This would involve the purchase and wrecking of abandoned industrial plants and, on one occasion, a railroad. Petitioner's ordinary traveling expenses during the taxable years, not including the extraordinary expenses referred to in the next succeeding paragraph, were in the amount of $2,000 per year. *79 In addition to these regular payments, petitioner received $1,000 and $375, respectively, in January and October of 1940, to repay him for expenditures made by him on trips to Cleveland, and on three or four trips to New York City of three or four days each to negotiate for the purchase of an obsolete railroad for wrecking. He kept no record of his expenditures, but he paid his traveling expenses and hotel bills, and those of an attorney who accompanied him on one trip and expenses paid in connection with the entertainment in night clubs of some of the persons with whom he was attempting to negotiate the purchases. His expenditures on these occasions for ordinary and necessary traveling expenses, in addition to the sums regularly taken by him for this purpose, were in the amount of $900. Opinion KERN, Judge: The first issue relates to the validity, for tax purposes, of the partnership alleged to have existed between petitioner and his wife. Although the partnership agreement states that Mrs. Kulka had from time to time contributed money to the business, so that she had a substantial interest in the property and business then operated by her husband as a sole proprietor, and *80 formerly operated by him as a solely-owned corporation, the evidence before us does not support that statement. There is no showing that Mrs. Kulka at any time made any contribution of money to the business, and no witness testified to any such contributions. The evidence shows, clearly and without contradiction, that the original capital of the business was $1,000, furnished by Mr. Kulka. There is also some evidence that in 1931 she paid a personal obligation which her husband owed the bank in which she had an account accumulated from money which he had paid to her from time to time as compensation for services. The obligation was specifically described as a personal obligation, and there is no showing that it had any connection whatever with the business of the corporation, or that, in paying it, she was making any contribution to or purchasing any interest in the business. She testified that her primary motive in this transaction arose from her natural interest in her husband's welfare, that she was willing to assume and pay his obligation, that she did not regard it as a loan, nor did she ask for or receive any promissory note or other evidence of indebtedness, and that she did *81 not even think he should consider himself obligated to repay the money. There is no contention that petitioner transferred to her any interest in the business in repayment of a loan arising out of this transaction. There is simply the declaration in the partnership agreement that petitioner would contribute the business to the partnership, and that both parties would be considered equal owners thereof by reason of her contribution of moneys to the business, which contributions so far as the evidence before us shows were nonexistent. We do not think it can be successfully contended that Mrs. Kulka made any contribution of capital to the alleged partnership in the form of money. With respect to the services rendered by Mrs. Kulka to the corporation, and to the business when it was operated as a sole proprietorship, the evidence shows she was paid a salary either regularly or irregularly in compensation for her services, after the business survived its early years of struggle from 1918 into the early 1920's, although we are not told the amount of the salary. In 1939 she began to draw sixty dollars a week from the alleged partnership. There is no evidence from which we could determine *82 that her services during all those years were worth more than the salaries she received, or that there was any agreement to pay more, then or later, or to transfer to her at any time any interest in the business in payment therefor. We can not, therefore, say that the mere rendering of such services, for a salary, of itself earned for her such a credit as would form the basis of a capital contribution to the partnership when it was formed. It is clear, therefore, that there was no contribution of capital originating with Mrs. Kulka to the alleged partnership. We do not think that the services performed by Mrs. Kulka for the alleged partnership were substantial enough to constitute such a contribution of services as would justify a holding that she was, in reality, a partner with her husband in the business enterprise here in question. The evidence does not show that petitioner's wife shared the management and control of the business, or rendered vital additional services. She made no important decisions concerning the business. She visited the office and yard in her husband's absence, to see that the work was going smoothly, but it is not shown that this service was vital to the *83 life or success of the business, or a substantial factor in the production of the income involved, although it was undoubtedly reassuring to her husband. Her position more nearly approached that of a trusted employee than that of a partner sharing the responsibilities of management and control. The facts here are in essential respects similar to those present in (June 19, 1946) which was decided under the authority of ; ; ; ; ; ; ; and (June 4, 1946). In the instant case the wife had the right to sign and endorse checks while in the cited case only the taxpayer and his bookkeeper had such a right. However, we do not think this difference in the facts to be of compelling importance, and on the authority of the Belcher case, we are of the opinion that respondent did not err in taxing *84 the entire partnership income to petitioner. The second issue before us concerns the treatment of amounts received by petitioner for traveling expenses. Respondent included the entire amounts so received in petitioner's taxable income on the authority of section 19.23 (a)-2(b) and (c) of Regulation 103, and contends that petitioner has not satisfactorily established the expenditure by him of any amounts for travel. The evidence relative to these expenditures is far from satisfactory. It does establish that he spent from two-thirds to four-fifths of his time away from home on business. For this regular travel, he withdrew $50 per week, but he kept no records as to his actual expenditures and could only testify in general terms that they were in excess of the amounts withdrawn by him. The two special items of $1,000 and $375 were received by petitioner as reimbursement for his expenses in connection with three or four trips to New York, and some travel to and from Cleveland, in negotiating for the purchase of two obsolete railroads. On one trip to New York, he was accompanied by an attorney, whose expenses he paid. He spent three or four days on each trip, and did some entertaining *85 in connection with the business he had come to transact. He paid his railroad fare, and those of the attorney, and expenses of food and lodging for both. He kept no record or itemized account of his expenses, but testified that he estimated he had spent a total of $1,375 for all these purposes. It is apparent that the proof as to these items of expenditure is unsatisfactory and that the weakness in the proof is caused by petitioner's own failure to keep the proper record. However, upon the whole record we are convinced that substantial expenditures on account of business traveling expenses were made by petitioner in the amounts found by us. See . We conclude therefore, that while respondent did not err, technically, in requiring petitioner to include the amounts paid to him as traveling expenses in his income tax returns, he should be allowed deductions in the amounts of the expenditures found by us to have been made by petitioner for ordinary and necessary business expenses. Decisions will be entered under Rule 50. Footnotes
1. The evidence as to the salary paid to petitioner's wife prior to the formation of the partnership is not clear. From the entire record we have concluded that payments were made to her as compensation for her services, at irregular times but in considerable amounts.↩